



DAG/KSH

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIM. NO. 21-00161-JB |
| | * | USAO NO. 21R00503 |
| v. | * | |
| | * | VIOLATIONS: 18 U.S.C. § 1349 |
| CORINE CAMPBELL | * | 18 U.S.C. § 1343 |

FILED IN OPEN COURT

SEP 29 2021

CHARLES R. DIARD, JR.
CLERK

**UNDER SEAL**

**INDICTMENT**

The Grand Jury charges:

**Introduction**

At all times material to this Indictment:

1. The SBA was created in 1953 as an independent agency of the executive branch of the federal government to aid, counsel, assist, and protect the interests of small businesses and to maintain and strengthen the overall economy of the United States. The SBA maintained and strengthened the nation's economy by, among other activities, enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. In executing its mission, the SBA provided direct loans to small businesses and those affected by disasters.

2. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act was enacted to provide emergency financial assistance to the millions of Americans suffering adverse economic consequences caused by the COVID-19 pandemic. The CARES Act established several new temporary programs and provided for expansion of others, including programs created and administered by the SBA.

3. As part of this effort, the SBA enabled and provided for loans through banks, credit

SEALED

unions, and other lenders. These loans had government backed guarantees. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). Congress has since increased the authorization amount for PPP loans to over $813 billion. The PPP required that the small businesses must have been in operation on or before February 15, 2020, maintained employees, and realized monthly payroll costs.

4. To obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business. The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

5. A PPP loan application must be processed by an SBA authorized participating lender. If a PPP loan application is approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA while processing the loan.

6. PPP loan proceeds must be used by the business on certain permissible expenses—

SEALED

payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time after receiving the proceeds and uses a certain amount of the PPP loan proceeds on payroll expenses.

7. Prestamos CDFI, of Phoenix, Arizona, is an approved PPP lender. In conjunction with the SBA, Prestamos CDFI works jointly with Blue Acorn, its information technology partner, to ingest, evaluate, process, and approve PPP applications. Blue Acorn maintains computer servers in Virginia which ingested this PPP application.

8. Prestamos CDFI maintains its operational lending account at PNC Bank, which is headquartered in Pennsylvania. Navy Federal Credit Union is headquartered in Vienna, Virginia. Both PNC Bank and Navy Federal Credit Union are financial institutions as defined by 18 U.S.C. § 20.

## Count One
## Conspiracy to Commit Wire Fraud
## Title 18, United States Code, Section 1349

9. The factual allegations of paragraphs 1 through 8 of this Indictment are re-alleged for Count 1 as though fully set forth therein.

### The Conspiracy

10. From in or about May 1, 2020, and continuing to in or about September 20, 2021, the exact dates being unknown, within Mobile County in the Southern District of Alabama, and elsewhere, the defendant

**CORINE CAMPBELL,**

did knowingly combine, conspire, and agree with others known and unknown to the Grand Jury,

3

SEALED

to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

## Manner and Means

11. It was a part of the conspiracy that the defendant **CORINE CAMPBELL**, and her co-conspirators, both known and unknown to the Grand Jury, would and did submit, and cause to be submitted, false and fraudulent PPP loan applications to the Prestamos CDFI and the SBA to obtain money for **CAMPBELL'S** personal use and for the personal use of her co-conspirators.

12. It was a further part of the conspiracy that defendant **CORINE CAMPBELL**, and her co-conspirators, both known and unknown to the Grand Jury, would and did falsely represent on PPP loan applications that **CAMPBELL's** co-conspirators owned businesses which had been in operation since January 1, 2020 and had gross revenues of more than $105,000.00 and operating costs of more than $24,000.00 during Tax Year 2019.

13. It was a further part of the conspiracy that defendant **CORINE CAMPBELL**, and her co-conspirators, both known and unknown to the Grand Jury, would and did cause Prestamos CDFI to make electronic transfers of $20,830.00 into financial accounts at Navy Federal Credit Union as a result of the false and fraudulent PPP loan application in co-conspirators' names.

14. It was a further part of the conspiracy that defendant **CORINE CAMPBELL**, and her co-conspirators, both known and unknown to the Grand Jury, would and did cause electronic transfers from certain co-conspirators' financial accounts at Navy Federal Credit Union to transfer sums of fraudently obtained PPP funds to **CAMPBELL'S** accounts.

All in violation of Title 18, United States Code, Section 1349.

SEALED

## Count Two
## Wire Fraud
## Title 18, United States Code, Section 1343

15. The factual allegations in paragraphs 1 through 8 and 11 through 14 of this Indictment are realleged as though fully set forth herein.

16. From on or about April 1, 2021, and continuing to in or about August 2021, the exact dates being unknown, within Mobile County in the Southern District of Alabama, and elsewhere, defendant

**CORINE CAMPBELL**

aided and abetted by and by others both known and unknown to the Grand Jury, devised and intended to devise a scheme and artifice to defraud the United States, Prestamos CDFI, the SBA, and others, and to obtain money and property belonging to the United States, Prestamos CDFI, the SBA, and others, by means of materially false and fraudulent pretenses, representations, and promises.

### Purpose of the Scheme and Artifice

17. The purposes of the scheme and artifice are set out in Paragraphs 11 through 14 of this Indictment. Paragraph 11 is hereby incorporated by reference as though fully set forth herein, with the words "It was part of the scheme and artifice" replacing "It was part of the conspiracy." Paragraph 12 is hereby incorporated by reference as though fully set forth herein, with the words "It was part of the scheme and artifice" replacing "It was part of the conspiracy." Paragraph 13 is hereby incorporated by reference as though fully set forth herein, with the words "It was a further part of the scheme and artifice" replacing "It was a further part of the conspiracy" at the start of each paragraph.

SEALED

### The Wire Communication

18. On or about April 15, 2021, in Mobile County in the Southern District of Alabama, and elsewhere, defendant

**CORINE CAMPBELL,**

and abetted by Demetrius Richardson and Tyanna Latoya Earl, who are not named as defendants herein, and by others both known and unknown to the Grand Jury, for the purpose of executing the above-described scheme and artifice and attempting to do so, did cause to be transmitted in interstate commerce, by means of a wire communication, certain signs and signals, that is, the defendant **CAMPBELL**, aided and abetted by Richardson and Earl and by others both known and unknown to the Grand Jury, caused an interstate wire communication when a false and fraudulent PPP loan application for Richardson was submitted to the Prestamos CDFI and the SBA.

All in violation of Title 18, United States Code, Sections 1343 and 2.

### Count Three
### Wire Fraud
### Title 18, United States Code, Section 1343

19. The factual allegations in paragraphs 1 through 8 and 11 through 13 of this Indictment are realleged as though fully set forth herein.

20. From on or about March 18, 2021, and continuing to in or about September 29, 2021, the exact dates being unknown, within Mobile County in the Southern District of Alabama, and elsewhere, defendant

**CORINE CAMPBELL,**

aided and abetted by others both known and unknown to the Grand Jury, devised and intended to

SEALED

devise a scheme and artifice to defraud the United States, Prestamos CDFI, the SBA, and others, and to obtain money and property belonging to the United States, Prestamos CDFI, the SBA, and others, by means of materially false and fraudulent pretenses, representations, and promises.

### Purpose of the Scheme and Artifice

21. The purposes of the scheme and artifice are set out in Paragraphs 11 through 13 of this Indictment. Paragraph 11 is hereby incorporated by reference as though fully set forth herein, with the words "It was part of the scheme and artifice" replacing "It was part of the conspiracy." Paragraph 12 is hereby incorporated by reference as though fully set forth herein, with the words "It was part of the scheme and artifice" replacing "It was part of the conspiracy." Paragraph 13 is hereby incorporated by reference as though fully set forth herein, with the words "It was a further part of the scheme and artifice" replacing "It was a further part of the conspiracy" at the start of each paragraph.

### The Wire Communication

22. On or about March 25, 2021, in Mobile County in the Southern District of Alabama, and elsewhere, defendant

**CORINE CAMPBELL,**

aided and abetted by Leroy Vidal Jackson, who is not maned as a defendant herein, and by others both known and unknown to the Grand Jury, for the purpose of executing the above-described scheme and artifice and attempting to do so, did cause to be transmitted in interstate commerce, by means of a wire communication, certain signs and signals, that is, the defendant **CAMPBELL**, aided and abetted by Jackson, and by others both known and unknown to the Grand Jury, caused an interstate wire communication when a false and fraudulent PPP loan application for Jackson

SEALED

was submitted to the Prestamos CDFI and the SBA.

All in violation of Title 18, United States Code, Sections 1343 and 2.

## Forfeiture Notice

Upon conviction of any of the violations of Title 18, United States Code, Section 1343 Charged in Counts One, Two, and Three, the defendant **CORINE CAMPBELL** shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property constituting or derived from proceeds traceable to said violations, including but not limited to the following:

> MONEY JUDGMENT: A sum of money in United States Currency of at least $200,000.00 that the defendant obtained as a result of the offenses charged in Counts One, Two and Three.

If, as a result of any act or omission of the defendant, any property subject to forfeiture:

a. cannot be located upon the exercise of due diligence;
b. has been transferred or sold to, or deposited with, a third person;
c. has been placed beyond the jurisdiction of the Court;
d. has been substantially diminished in value; or
e. has been commingled with other property which cannot be subdivided without difficulty;

the United States intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

SEALED

A TRUE BILL



_____
FOREMAN UNITED STATES GRAND JURY
SOUTHERN DISTRICT OF ALABAMA

SEAN P. COSTELLO
UNITED STATES ATTORNEY

*Kasee S. Heisterhagen*
KASEE S. HEISTERHAGEN
Assistant United States Attorney
Deputy Chief, Criminal Division

*Deborah A. Griffin*
DEBORAH A. GRIFFIN
Assistant United States Attorney

*Sean P. Costello*
SEAN P. COSTELLO
Chief, Criminal Division          SEPTEMBER 2021

SEALED